STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. ROB-
ERT P. GEYER, PLAINTIFF IN ERROR.

Submitted December 3, 1909—Decided October 14, 1910.

The fact that a solicitor who is covinously retaining $2,200 from his
client, refuses to pay to her another sum of $400 that he ad-
mittedly owes to her, excepting upon condition that she release
him from all claims she may have against him, is some evidence
that the latter sum is retained with intent to convert it under
circumstances of concealment and dissimulation that make such
intent a fraudulent one.

On error to the Passaic Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON
and VOORHEES.

For the plaintiff in error, *Edmund G. Staller.*

For the state, *Eugene Emley.*

The opinion of the court was delivered by

GARRISON, J. Plaintiff in error was convicted in the Pas-
saic Sessions of the embezzlement of $400 received by him as
the solicitor of one Mrs. Geering while acting for her in a di-
vorce suit brought by her husband. This $400 was the balance
of $2,800 that Mrs. Geering had authorized the plaintiff in
error to accept in settlement with her husband for alimony.
It was admitted at the trial that this sum had not been paid
over by the plaintiff in error, whose contention then, as now,
was that notwithstanding his retention of the money so due
to his client in the face of her repeated demands for it there
was no fraudulent conversion. This is the question that is
raised before us by an assignment of error based upon an ex-
ception to the refusal of the Quarter Sessions to direct a ver-

dict for the defendant at the close of the trial.  If there was
at that time any evidence from which the jury might infer
that this money was retained from its lawful owner by the
plaintiff in error with the intent to convert it under circum-
stances that amounted to fraud, there was no error in the re-
fusal of the trial court to take the case from the jury.

The case was clearly not one of the mere retention of money
where no demand had been made or of mere neglect or delay
in paying it over pending an accounting or the closing of a
transaction; hence this case does not resemble *State* v. *Fitz-
gerald,* 21 *Vroom* 475, or *State* v. *Temple,* 34 *Id.* 375.  On
the contrary, the client's right to the money she demanded was
recognized by her solicitor who based his refusal to pay it over
to her upon her alleged refusal to receipt for it.  The jury,
however, would have been amply justified in finding that the
condition imposed by the plaintiff in error was not that his
client should receipt for the money she was to receive but
that she should execute to him a release of all claims she might
have against him.  Having found this the jury could hardly
avoid finding that the condition thus imposed amounted to
a refusal by the plaintiff in error to pay over the $400 to his
client unless she should release him from the payment of
$2,200 that in equity he owed to her.  For Mr. Geering had
testified that he had agreed with plaintiff in error to pay
$5,000 in settlement of his wife's alimony and had acquiesced
in a proposition by which if her solicitor could settle with
his client for less than the $5,000 he might keep the rest for
himself, and that the sum of $5,000 had actually been paid
to plaintiff in error before he started for Europe to see what
he could get Mrs. Geering to accept.  There was further
proof from which the jury could find that plaintiff in error,
by the suppression of this state of affairs, obtained Mrs. Geer-
ing's authority to settle with her husband for $2,800, leaving
$2,200 which, under his secret arrangement, plaintiff in error
kept for himself, and that it was to forearm himself against
having to disgorge this sum, should the truth become known,
that he demanded of his client a general release as the condi-

tion upon which he would pay over to her the balance of her $2,800. It is true that Mrs. Geering, at the time she refused to execute such a release, knew none of these facts for the reason that they had been kept from her by the guile of her solicitor; but he cannot on that account claim any better standing in a court of law than if the truth had been known. Hence his demand for a release must stand as to him precisely as if he had refused to pay over the $400 to which his client was legally entitled excepting upon her releasing him from the payment of $2,200 to which she was equitably entitled. An offer hedged round with such a condition was some evidence from which the jury might infer that the plaintiff in error did not impose the condition in good faith and hence that it was consistent with and evidence of an intent not to pay over the money until compelled by law to part with it. It is only by claiming the benefit of his own dissimulation and bad faith that the plaintiff in error can escape from this conclusion, and the case is full of evidence of such concealments and subterfuges as would make such intent, if it existed, a fraudulent one. The case throughout is an illustration of an act at its inception merely dishonorable ripening imperceptibly into one of actual dishonesty; a thing fortunately rare in a profession whose unlimited opportunities for such wrong-doing are much more than overbalanced by its high professional standards and the keenness of its ethical sense in this regard.

The judgment of the Passaic Sessions is affirmed.